## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JEROME SELKE
an individual,

      Plaintiff,

v.

ALLY SERVICING LLC,
a foreign limited liability company
EQUIFAX INFORMATION
SERVICES,
A foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company

      Defendants.

_____/

Case No.:

## PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff, JEROME SELKE, by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Jon P. Dubbeld, Esq. as Lead Counsel for Plaintiff.

## COMPLAINT

**COMES NOW**, Plaintiff, JEROME SELKE (hereinafter "Plaintiff"), by and through the undersigned counsel, and hereby files this Complaint against Defendants, ALLY SERVICING LLC, (hereinafter, "Ally"), EQUIFAX INFORMATION SOLUTIONS (hereinafter, "Equifax), EXPERIAN INFORMATION SOLUTIONS,

1

INC. (hereinafter, "Experian") and TRANS UNION LCC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

**PRELIMINARY STATEMENT**

1.     This is an action brought by an individual consumer for damages for Ally's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Ally improperly credit-reported and subsequently improperly verified its credit reporting of an Alleged past due balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union. More specifically, despite Plaintiff advising Ally that he did not owe the full Account balance provided and despite Plaintiff sending a check to Ally to satisfy the remainder of the Alleged Debt that he did indeed owe and despite Ally cashing Plaintiff's check—and after Plaintiff disputed Ally's reporting of such erroneous information directly to Equifax, Experian, and Trans Union—Ally *continued* to report such account with a significant fraudulent, balance due and past-due.

2.     Further, this is an action brought by Plaintiff, an individual consumer, for damages resulting from Equifax's, Experian's, and Trans Union's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Defendants' failed to establish, maintain, and follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files published by Defendants with respect to the following vehicle lease furnished by Ally (hereinafter, the "Ally Account"). More specifically, Equifax,

Experian, and Trans Union inaccurately, incompletely, and misleadingly credit reported a significant past due balance not legitimately owed by Plaintiff.

3.     Additionally, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Defendants failed to reasonably investigate disputes Defendants received from Plaintiff demanding investigations and re-investigations of the disputed Ally Account as required by the FCRA.

4.     Furthermore, this is an action brought by Plaintiff, an individual consumer, for Ally's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statues (hereinafter, "FCCPA") wherein Ally communicated directly with Plaintiff in an attempt to collect a consumer debt in a manner reasonably expected to abuse or harass Plaintiff. Ally also attempts to collect such debt directly from Plaintiff that Plaintiff did not and does not owe.

**<u>JURISDICTION, VENUE & PARTIES</u>**

5.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681 *et seq*.

6.     Defendants are subject to the jurisdiction of this Court as Defendants regularly conduct business in this District.

7.     Venue is proper in this District as the acts and transactions described herein originated and occurred in this District, Plaintiff applied for and obtained a lease through Ally for a vehicle in Manatee County, Florida.

8.     At all material times herein, Plaintiff is a natural person residing in Manatee County, Florida.

9. At all material times herein, Ally Servicing LLC is a foreign limited liability company with its principal place of business located at 500 Woodward Avenue, 10th Floor, Detroit Michigan, 48226.

10. At all material times herein, Ally uses instrumentalities of interstate commerce through mail and telecommunications for the principal purpose of collecting consumer debts.

11. At all material times herein, Ally regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due to another.

12. At all material times Experian is a foreign profit corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

13. At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

14. At all material times, Trans Union is a foreign limited liability company existing under the laws of Delaware with its principal place of business at 555 West Adams Street, Chicago, IL 60661.

## FCRA STATUTORY STRUCTURE

15. Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a fair and equitable manner to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 United States Code, Section 1681b.

4

16.　　Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § 1681e(b) (emphasis added).

17.　　Further, under the FCRA, whenever a consumer reporting agency receives a dispute from a consumer, the consumer reporting agency is required to provide written notice to the consumer including the results of a reinvestigation not later than five (5) business days after the completion of the reinvestigation. *Id*. at § 1681i(a)(6).

18.　　Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

19.　　Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

### FCCPA STATUTORY STRUCTURE

20.　　The FCCPA is a state consumer protection statute, modeled after the

5

FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy. Fla. Stat. §§ 559.55 and 559.77(5).

21.    The FCCPA imposes liability on any creditor/person as well as any debt collector who "uses instrumentality of interstate commerce or mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another: and both statues prohibits engaging in particular violative conduct in connection with collecting consumer debts. Fla. Stat. § 559.55(5).

22.    Specifically, the FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." Fla. Stat. § 559.55(2) (emphasis added).

23.    For example, the FCCPA prohibits a person from collecting consumer debt by communicating with the consumer in a manner that can be expected to harass or abuse the consumer debtor, and also prohibits a person from communicating directly with a consumer when such person knows the consumer is represented by legal counsel with respect to such debt. *See* Fla. Stat. §§ 559.72(7) and (9).

## GENERAL ALLEGATIONS

24.    At all material times herein, Plaintiff is an alleged "consumer" as defined by the FCRA, Section 1681a(c) because he is an individual and allegedly obligated to pay a debt.

25. At all material times herein, Defendants' credit report information concerned an Ally Financial Vehicle lease (hereinafter, "Ally Account" or "Alleged Debt"), referenced by Account number beginning in 2281-.

26. At all material times herein, Equifax, Trans Union, and Experian are each considered a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engage in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Equifax, Trans Union, and Experian then disburse such consumer reports to third parties under contract for monetary compensation.

27. At all material times herein, Defendants acted themselves or through their respective agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

28. All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

### Plaintiff's Disputes with Ally and Ally's Incorrect Reporting on the Account

29. At some point during 2022, Plaintiff leased a Jeep Grand Wagoneer through Ally Financial.

30. Throughout his lease, Plaintiff noticed the vehicle developed various mechanical issues such as significant vibration and shaking while driving on the highway, deeming the vehicle unsafe for highway travel.

31.     After servicing the vehicle multiple times, the mechanical issues were not resolved.

32.     The vibration on the vehicle also caused abnormal tire wear on the vehicle to the extent that the tires had to be replaced three times during Plaintiff's lease period.

33.     After Plaintiff continued experiencing these problems, he later learned through independent research that similar vibration issues involving Jeep Wagoneers have been extensively reported by other owners of the same vehicle, suggesting that the issue was not unique to Plaintiff's vehicle.

34.     As a result, Plaintiff called Ally and requested his monthly payment due date be altered.

35.     Plaintiff was told by an Ally representative that his due date could not be altered but the representative also stated that any late fees resulting from the timing of Plaintiff's payments would be waived at the end of the lease.

36.     Based on this representation, Plaintiff continued making payments as usual with the understanding that any late fees would be removed when the lease ended.

37.     Plaintiff returned his vehicle to the Douglas Chrysler Dodge dealership in Venice, Florida on or about July 25, 2025.

38.     On or about July 28 2025, Ally issued a lease-end billing statement to Plaintiff claiming a balance of $5,405.76, which included excess mileage charges, taxes, a disposition fee, and $1584.22 in late fees.

39. On or about August of 2025, Plaintiff sent Ally a written dispute explaining that the excess mileage charged was the result of the vehicle defect that forced Plaintiff to avoid highway travel, (hereinafter, Plaintiff's First Dispute").

40. Plaintiff also disputed the late fees because he was told earlier by Ally that these fees would be waived at the termination of his lease.

41. Plaintiff sent this dispute by certified mail and also mailed copies to both Ally's payment processing address and their legal and corporate address to ensure the dispute reached the appropriate department.

42. Enclosed with the dispute, Plaintiff included a check in the amount of $422.65 representing the portion of the balance that Plaintiff was not disputing and that he felt was owed and was willing to pay.

43. On the check itself, Plaintiff wrote that Ally's acceptance of the payment constituted waiver of the disputed charges and that it represented final settlement of the Ally Account.

44. Plaintiff received proof of delivery via certified mail on or about August 16, 2025.

45. Ally deposited Plaintiff's check with this inscription on or about August 17, 2025.

46. After depositing the check, starting on or about August 20, 2025, Ally continued to send Plaintiff notices stating that $4,985.11 was still owed by Plaintiff on the Ally Account.

47. Contradictorily, Plaintiff received another letter from Ally on or about

August 27, 2025, where Ally stated that the Account should be considered settled after Plaintiff's most recent correspondence enclosing payment.

48. At some point throughout this time, Ally began reporting the Alleged Debt in the amount of $4,985.00 to Experian, Equifax, and Trans Union.

49. On or about September 12, 2025, Ally sent correspondence to Plaintiff indicating that Ally had credited Plaintiff's Ally Account in the amount of $2,000.00.

50. As such, on or about September of 2025, Plaintiff would allegedly only owe around $2,985.00 to Ally for the incurred charges.

51. Despite the credit notification by Ally, Ally continued to report a $4,985.00 balance to Experian, Equifax, and Trans Union and never applied the credit.

52. On or about October 5, 2025, Plaintiff received correspondence from Ally warning Plaintiff that the Account could be sent to collections.

53. Plaintiff sent a follow up letter confirming that the Ally Account should be considered settled based on Ally's acceptance of the conditional payment.

54. Further, Plaintiff sent a formal notice asserting accord and satisfaction and requesting that the Account be corrected and that a collection activity cease.

55. Plaintiff did not receive a response from Ally to address the disputes or any settlement terms or agreement.

**Experian, Equifax, and Trans Union's Credit Reporting of the Ally Account**

56. On or about November of 2025, Plaintiff entered into another vehicle lease with Ally Financial serving as the lessor.

57. Despite Plaintiff's disputes, the check Plaintiff wrote to Ally that was

immediately cashed by Ally, and the alleged credit Ally made to Plaintiff's Account, Ally continued to report the full balance as past due to all three of the credit bureaus.

58.    On or about March 18, 2026, Plaintiff sent an identical letter to Equifax, Experian, and Trans Union---with the assistance of his attorneys—wherein Plaintiff, disputed Equifax, Experian, and Trans Union's reporting of the Ally Account as delinquent with a past due balance of $4,985.00.

59.    Within Plaintiff's Dispute, he included proof of his identity using his Florida Driver's License in addition to the letter from Ally stating they had credited his Account with $2,000.00.

60.    Experian received Plaintiff's Dispute.

61.    On or about April 17, 2026, Experian sent a letter to Plaintiff stating that their reinvestigation of the dispute was complete and reaffirmed the balance owed on the Ally Account.

62.    Trans Union received Plaintiff's First Dispute letter.

63.    On or about March 28, 2026, Trans Union sent correspondence to Plaintiff in which they acknowledged Plaintiff's dispute but claimed the request did not come from an authorized user, and thus they failed to investigate and did not process the dispute request.

64.    Equifax received Plaintiff's First Dispute.

65.    Plaintiff did not receive dispute results from Equifax regarding the disputed Ally Account.

66.    Equifax did not investigate or re-investigate Plaintiff's April 2026 dispute.

11

67. On or about May 2026, Plaintiff obtained a copy of his Experian, Equifax, and Trans Union credit reports.

68. Despite Plaintiff's due diligence in disputing the Ally Account, sending a check for charges he legitimately owed that was later cashed, and the Ally Account credit awarded to Plaintiff on or about September of 2025, Ally continues to report the past due derogatory balance to Equifax, Experian, and Trans Union.

69. Despite Plaintiff's dispute to all three credit bureaus outlining that the Ally Account had been fully disputed and later satisfied by Plaintiff via valid payment, Experian, Equifax, and Trans Union continued reporting the past due derogatory balance on Plaintiff's credit reports.

70. At some point in 2026, Plaintiff applied for a Home Equity Line of Credit during which he was informed that his application was denied due to the Ally Account balance and it's reporting on Plaintiff's credit reports with a balance of $4985.11.

## DAMAGES

71. As a result of Equifax's, Experian's, and Trans Union's unlawful reporting of the Accounts, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

72. Overall, Plaintiff suffered damage to his credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendants unfairly discriminated against Plaintiff

12

by ignoring—or failing to reasonably review—Plaintiff's Account and Plaintiff's disputes.

73.    Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

74.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

75.    As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he did not wish to further damage his credit score with futile credit inquiries, and he was continually evaluated for credit using consumer reports that reported the Account with a significant balance.

76.    Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite not being responsible for the charges incurred on his Ally statement, Plaintiff must simply endure Defendant's erroneous reporting of the Account.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(As to Ally)**

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated

herein and further states as follows:

77.    Ally is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and TransUnion delete the past due balance from Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

78.    As described above, Plaintiff was not and is not personally liable for the Account, because Plaintiff did not legitimately owe all the charges listed and paid the charges he did legitimately owed in full satisfaction of the Account on or about August of 2025.

79.    Despite Plaintiff not being responsible for the full balance on the Ally Account, and despite Ally receiving notice of Plaintiff's disputes from Equifax, Experian, and Trans Union, Ally willfully and/or negligently failed to request that Experian, Equifax, and TransUnion delete the past due derogatory associated with the Account and continued to report derogatory, late payment information to Experian, Equifax, and TransUnion including as significantly past-due.

80.    Between August 2025 and April 2026, Plaintiff repeatedly disputed Ally's reporting of the Account to Equifax, Experian, and Trans Union, and the credit reporting agencies forwarded Plaintiff's disputes to Ally.

81.    In response to Plaintiff's disputes, despite Ally receiving notice of

Plaintiff's disputes—including disputes directly from Plaintiff and his attorneys—Ally failed to request that Equifax, Experian, and Trans Union update the past due balance of the Account on Plaintiff's credit reports and credit files.

82.    Instead, Ally purportedly verified and/or updated its reporting of the Account including a significant balance due and significantly past-due, and with a derogatory payment history.

83.    Ally's refusal to request that Equifax, Experian, and Trans Union update their reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as Ally clearly possessed knowledge that the Account charges were not all legitimately owed by Plaintiff and that the Account was satisfied by Plaintiff.

84.    Moreover, Ally knew that the charges were not all legitimately owed by Plaintiff because Plaintiff had informed Ally of the mileage charges incurred as a result of mechanical defects in his vehicle and of no fault of his own.

85.    Further, Plaintiff sent Ally a check to satisfy the remaining balance owed that were legitimately owed by Plaintiff and Ally cashed this check in full satisfaction of Plaintiff's Account balance.

86.    Ally's re-investigations were not conducted in good faith.

87.    Ally's re-investigations were not conducted reasonably.

88.    Ally's re-investigations were not conducted using all information and documents reasonably available to Ally.

89.    As a result of Ally's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit

15

applications as he was informed he would not qualify for any line of credit as long as Ally continued reporting the Account balance, believed he would not be able to obtain favorable credit terms as a result of Ally's derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires.

90.    Ally's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

91.    Ally's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated herein and further states as follows:

92.    Equifax, Trans Union, and Experian are all subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

93.    Equifax, Trans Union, and Experian willfully and/or negligently failed

16

to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Ally Account that was fully satisfied by Plaintiff and confirmed satisfied in writing by Ally Financial.

94.    Despite Plaintiff outlining the material defects with the leased vehicle, making it so he was unable to drive on the highway and thus increasing mileage charges for Plaintiff at no fault of his own—Equifax, Experian, and Trans Union reported the Ally Account as late/past due several months after the Account was fully satisfied with Ally.

95.    Equifax's, Experian's and Trans Union's reporting of the Account as owed in the amount of $4,985.00 is false and evidences Equifax's, Experian, and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

96.    Furthermore, following multiple disputes from Plaintiff notifying Equifax, Experian, and Trans Union of their errors, all three credit bureaus *still* generated and published Plaintiff's Equifax, Experian, and Trans Union credit reports with inaccurate late payment information on the Ally Account.

97.    Between July 2025 and the date of this Complaint, Equifax, Trans Union, and Experian each generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading information regarding the Account.

98.    Equifax, Trans Union, and Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of

17

Plaintiff's credit reports and credit files following the full satisfaction and settlement of the Ally Account by Plaintiff.

99. Overall, Plaintiff suffered damage to his credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendants unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's Account and Plaintiff's disputes following satisfaction of the Account in full.

100. As a result of Equifax's Trans Union's, and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making additional credit applications as he believed he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts inaccurately and/or incompletely.

101. Equifax's, Trans Union's, and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, serious injuries, damages, and harm to Plaintiff as stated herein.

102. Equifax's Trans Union's, and Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**

18

**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i *et seq.***
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through seventy-six (76) as if fully restated herein and further states as follows:

103.    Equifax, Trans Union, and Experian are subject to, and violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified; and 1681i(a)(6) by failing to provide written notice of Defendants' re-investigation results within five (5) business days after the completion of the investigation.

104.    Specifically, Equifax, Trans Union, and Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

105.    Overall, Plaintiff's disputes provided Equifax, Trans Union, and Experian with sufficient information and supporting documentation allowing Equifax, Trans Union, and Experian to identify the Account that was fully satisfied by Plaintiff via check, and therefore, should be marked as fully satisfied and paid with no ongoing

19

derogatory payment history.

106.    Despite Plaintiff's repeated disputes with Equifax, Trans Union, and Equifax failed to perform a reasonable re-investigation because each continued to report late payment information on the Ally Account following Plaintiff's satisfaction of the Ally Account lease via accord and satisfaction.

107.    Despite Plaintiff's repeated disputes to Experian, Trans Union, and Equifax failed to perform a reasonable re-investigation because each continued to report the Account without reporting such account as satisfied and paid with no past due balance owed and no derogatory payment information.

108.    Furthermore, Experian, Equifax, and Trans Union did not provide written dispute results to Plaintiff in response to at least one of Plaintiff's disputes to Experian.

109.    Equifax, Trans Union, and Experian failed to update the Account in Plaintiff's credit report and credit file in response to Plaintiff's various disputes and failed to request documents from Ally Financial to support their reporting of the Account.

110.    As such, Equifax, Trans Union, and Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

111.    Such reporting is false and evidences Equifax's Trans Union's and Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated

disputes.

112. Defendants' reinvestigations of Plaintiff's disputes were not conducted reasonably.

113. Defendants' reinvestigations of Plaintiff's disputes were not conducted in good faith.

114. Defendants' reinvestigation procedures are unreasonable.

115. Defendants' re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Defendants.

116. Experian's Trans Union's and Equifax's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the Account was in excess of what Plaintiff legitimately owed to Ally, and the remainder that was legitimately owed was paid in satisfaction of the Account by Plaintiff on or about August 13, 2025 – and therefore should be indicated as such on Plaintiff's credit report—was done in bad faith.

117. Equifax's, Trans Union's, and Experian's reinvestigations were *per se* deficient because of these failures in Equifax's, Trans Union's and Experian's reinvestigations of Plaintiff's disputes and the Account.

118. As a result of Equifax's Trans Union's and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile

21

credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as derogatory, negative, or adverse accounts.

119.   Overall, Plaintiff suffered damage to his credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendants unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's Account and Plaintiff's disputes following satisfaction of the Account in question by Plaintiff.

120.   Equifax's, Trans Union, and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, serious injuries, damages, and harm to Plaintiff as stated herein.

121.   Equifax's, Trans Union, and Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)**
**(As to Ally)**

Plaintiff re-alleges paragraphs (1) through seventy-six (76) as if fully restated herein and further states as follows:

122.   Ally is subject to, and violated the provisions of, Florida Statutes: Section

559.72(7) by communicating with Plaintiff in an attempt to collect an alleged consumer debt through means which can reasonably be expected to abuse or harass Plaintiff and Florida Statutes, Section 559.72(9) by communicating with Plaintiff in an attempt to collect the Alleged Debts despite Ally possessing knowledge that the Alleged Debts were not legitimately owed by Plaintiff.

123. Specifically, as stated herein, Plaintiff was not and is not personally liable for the entire balance of the Alleged Debt because the Alleged Debt was satisfied through Plaintiff's check, referenced by check number 4647, which was mailed to Ally and signified waiver of the remaining charges.

124. Further, Plaintiff sent multiple disputes to Ally with evidence showing he was only responsible for $422.65 of the charges included in Ally's Account settlement correspondence dated on or about July 28, 2025.

125. Plaintiff provided the above-listed information to Ally including his name, address, and Account number associated with his vehicle lease.

126. Furthermore, Ally received notice and possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt yet Ally continued to communicate directly with Plaintiff in an attempt to collect the Alleged Debts.

127. Despite Ally possessing knowledge that the Alleged Debt was not legitimately owed by Plaintiff, Ally mailed at least 1 (one) Collection Notice to Plaintiff's home address directing payment of the Alleged debt.

128. Ally knew that it did not and does not possess the legal right to attempt

to collect the illegitimate Alleged Debt from Plaintiff.

129.    As such, Ally knowingly attempted to collect illegitimate Alleged Debt and asserted legal rights that Ally knows does not exist in an attempt to collect the Alleged Debt from Plaintiff.

130.    Ally's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite the Alleged Debt not being legitimately owed by him and by his portion of the debt being satisfied by payment of check to Ally directly and said check being promptly cashed, Ally could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

131.    As a result of Ally's letters, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite not owing the Alleged Debt personally, Plaintiff must simply endure Defendant's ongoing and invasive debt collection communications.

132.    Ally's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Sections 559.72(7), and 559.72(9).

133.    As a direct and proximate result of Ally's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct,

24

Plaintiff respectfully requests an entry of:

    a.    Judgement against Ally, Equifax, Experian, and Trans Union for maximum statutory damages for violations of the FCRA;

    b.    Judgement against Ally declaring that Ally violated the FCCPA;

    c.    Judgment enjoining Ally for maximum statutory damages under the FCCPA;

    d.    Judgement enjoining Ally from engaging in further conduct in violation of the FCCPA;

    e.    Actual damages in an amount to be determined at trial;

    f.    Compensatory damages in an amount to be determined at trial;

    g.    Punitive damages in an amount to be determined at trial;

    h.    An award of attorneys' fees and costs; and

    i.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

25

/s/ *Jon P. Dubbeld*
**Jon P. Dubbeld, Esq., FBN 105869**
Jessica A. Cowan, Esq., FBN 1069016
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 490-9919
Fax: (727) 255-5332
jdubbeld@swift-law.com
jcowan@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*